## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER SCHAMMEL,<br><br>    Plaintiff,<br><br>  v.<br><br>TERRAFORM POWER, INC., BRIAN LAWSON, CAROLYN J. BURKE, CHRISTIAN S. FONG, HARRY GOLDGUT, RICHARD LEGAULT, MARK MCFARLAND, and SACHIN SHAH,<br><br>    Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.  This action concerns a proposed transaction announced on March 16, 2020, pursuant to which TerraForm Power, Inc. ("TerraForm" or "the Company") will be acquired by Brookfield Renewable Partners L.P. ("BEP").

2.  On March 16, 2020, TerraForm's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which TerraForm shareholders will receive either 0.381 Class A exchangeable subordinate voting shares of Brookfield Renewable Corporation ("BEPC") or 0.381 of a limited partnership unit of BEP per share (the "Merger Consideration").

3.  On June 29, 2020, in order to convince TerraForm's stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and

misleading proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4.      The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.    Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5.      In addition, the Proxy disclosed that a special meeting of TerraForm stockholders will be held on July 29, 2020 at 11:00 a.m. to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so TerraForm stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs

complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.     Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of TerraForm common stock.

10.     Defendant TerraForm is a Delaware corporation and a party to the Merger Agreement.  TerraForm common stock is traded on the NASDAQ under the ticker symbol "TERP."

11.     Defendant Brian Lawson is Chairman of the Board of the Company.  Lawson is also a Vice Chair of Brookfield Asset Management ("Brookfield").

12.     Defendant Carolyn Burke is a director of the Company and a member of the special committee of the Board (the "Special Committee").

13.     Defendant Christian Fong is a director of the Company and a member of the Special Committee.

14.     Defendant Harry Goldgut is a director of the Company.  Goldgut is also Executive Chairman of Brookfield's infrastructure and power groups.

15.     Defendant Richard Legault is a director of the Company.  Legault is also Vice Chairman of Brookfield and sits on several boards for the Brookfield group.  From 2015 to 2018, Legault served as Executive Chairman of BEP.

16.     Defendant Mark McFarland is a director of the Company and a Chair of the Special Committee.

17.     Defendant Sachin Shah is a director of the Company.  Shah is also a Senior Managing Partner and Chief Executive Officer of the Brookfield Renewable Group, and Chief Executive Officer of BEP.

## FACTS

18.     TerraForm owns and operates over 4,200 MW of diversified high-quality solar and wind assets in North America and Western Europe underpinned by long-term contracts. TerraForm Power is sponsored by Brookfield, a global alternative asset manager with over $515 billion in assets under management. BEP and affiliates of BAM hold approximately 62% of TerraForm common stock as of the TERP record date.

19.     BEP is a Bermuda exempted limited partnership.  BEP's portfolio consists of hydroelectric, wind, solar and storage facilities in North America, South America, Europe and Asia, and totals over 19,000 MW of installed capacity and an approximately 13,000 MW development pipeline.

20.     On March 16, 2020, TerraForm's Board caused the Company to enter into the Merger Agreement.

21.     According to the press release announcing the Proposed Transaction:

BROOKFIELD, NEWS, March 16, 2020 (GLOBE NEWSWIRE) -- Brookfield Renewable Partners L.P. ("Brookfield Renewable" or "BEP") (TSX: BEP.UN; NYSE: BEP) and TerraForm Power, Inc. ("TerraForm Power" or "TERP") (Nasdaq: TERP) today announced that they have entered into a definitive merger agreement for Brookfield Renewable to acquire all of the outstanding shares of Class A common stock of TerraForm Power, other than the approximately 62% currently owned by Brookfield Renewable and its affiliates.

Each share of Class A common stock of TerraForm Power will be acquired for consideration equivalent to 0.381 of a Brookfield Renewable unit. For each share of TerraForm Power's Class A common stock held, TERP shareholders will be entitled to receive, at their election, either Class A shares of Brookfield Renewable Corporation ("BEPC shares") or limited partnership units of Brookfield Renewable ("BEP units").

4

***

**Transaction Details**

As consideration for the transaction, TERP shareholders can elect to receive, for each share of TerraForm Power Class A common stock held, either BEPC shares or BEP units. Consideration for each share of Class A common stock of TERP will be equivalent to 0.381 of a BEP unit. TERP shareholders who do not make any election will receive BEPC shares. There is no limit on the number of TERP shares that may be exchanged for BEPC shares or BEP units.

As previously announced, Brookfield Renewable also intends to make a special distribution of BEPC shares to its unitholders. BEPC is a Canadian corporation and will be listed on the TSX and NYSE. The BEPC shares are structured with the intention of being economically equivalent to a BEP unit, including identical distributions, as and when declared, and will be fully exchangeable at any time, at the shareholder's option, for a BEP unit on a one-for-one basis. As such, offering TERP shareholders the right to elect to receive BEP units or BEPC shares provides them the option of investing in Brookfield Renewable through a partnership or corporate structure. The exchange ratio will proportionally reflect the contemplated special distribution of BEPC shares to Brookfield Renewable unitholders, which we expect to close concurrently with the closing of the transaction.

The transaction is subject to, among other things, the non-waivable approval of TERP shareholders representing a majority of the outstanding shares of TERP Class A common stock not owned by Brookfield Renewable and its affiliates. The transaction is also subject to other customary closing conditions and is expected to close in the third quarter of 2020.

BMO Capital Markets and Scotiabank are serving as financial advisors and Cravath, Swaine & Moore LLP and Torys LLP are serving as legal counsel to Brookfield Renewable.

Morgan Stanley & Co. LLC and Greentech Capital Advisors are serving as financial advisors and Kirkland & Ellis LLP and Richard, Layton and Finger LLP are serving as legal counsel to the Special Committee.

22.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

23.     It is therefore imperative that the Company common stockholders receive the

material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

24.     Section 7.02 of the Merger Agreement provides for a "no solicitation" clause that prevents TerraForm from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

(a)     The Company shall not, nor shall it authorize or direct any Company Subsidiary to, nor shall it authorize or direct any officer, director or employee of, or any investment banker, attorney, accountant or other advisor, agent or representative (collectively, "Representatives") of, the Company or any Company Subsidiary to, directly or indirectly (i) solicit, initiate, knowingly encourage, knowingly induce or knowingly facilitate, or furnish or disclose non-public information in furtherance of, any Company Takeover Proposal or any inquiry or proposal that would reasonably be expected to result in or lead to a Company Takeover Proposal, (ii) enter into any agreement with respect to any Company Takeover Proposal (except an Acceptable Confidentiality Agreement in accordance with this Section 7.02(a) and except that the Company may ascertain facts from any person making an Company Takeover for the purpose of the Company Board and the Special Committee in each case informing itself about such Company Takeover Proposal and the person making it), (iii) enter into, participate in or continue any discussions or negotiations with respect to any Company Takeover Proposal or (iv) furnish or disclose to any person any non-public information regarding the Company or any Company Subsidiary with respect to any Company Takeover Proposal or any inquiry or proposal that would reasonably be expected to result in or lead to a Company Takeover Proposal; provided, however, that, prior to obtaining the Required Company Shareholder Approvals, the Company and its Representatives may, in response to a bona fide written Company Takeover Proposal that the Company Board (acting on the recommendation of the Special Committee) determines in good faith (after consultation with its outside legal counsel and financial advisor) constitutes, or could reasonably be expected to result in or lead to, a Superior Proposal, and which Company Takeover Proposal did not result from a material breach of this Section 7.02(a), subject to compliance with Section 7.02(c), (x) furnish information with respect to the Company and the Company Subsidiaries to the person making such Company Takeover Proposal and its Representatives (provided that all such information has been provided or made available to Parent or is provided or made available to Parent prior to or substantially concurrent with the time it is provided or made available to such person) pursuant to a customary confidentiality agreement not materially less restrictive of the person making the Company Takeover Proposal and its Representatives than the Confidentiality Agreement (an "Acceptable Confidentiality Agreement") and (y) participate in discussions or negotiations with the person making such Company Takeover Proposal and its Representatives, in

each case if and so long as the Company Board (acting on the recommendation of the Special Committee) determines in good faith after consultation with its outside legal counsel that the failure to provide such information or engage in such negotiations or discussions would be inconsistent with its fiduciary duties under applicable Law.  Without limiting the foregoing, it is agreed that any violation of the restrictions set forth in this Section 7.02(a) by any Representative of the Company or any Company Subsidiary shall be deemed to be a breach of this Section 7.02(a) by the Company unless (i) such violation is committed without the knowledge of the Company and the Company uses its reasonable best efforts to promptly cure such violation once the Company is made aware or (ii) such Representative is also a Representative of Parent.  Upon execution of this Agreement, the Company shall, and shall cause each Company Subsidiary and shall direct its and their Representatives to, (A) immediately cease and cause to be terminated all discussions or negotiations with any person (other than Parent and its Representatives) conducted prior to the date of this Agreement with respect to a Company Takeover Proposal or any inquiry or proposal that would reasonably be expected to result in or lead to a Company Takeover Proposal, (B) promptly request each person (other than Parent and its Representatives), if any, that has executed a confidentiality agreement in the last 6 months to return or destroy all information heretofore furnished to such person or its Representatives by or on behalf of the Company or any Company Subsidiary and (C) immediately terminate all physical and electronic data room access previously granted to any person or its Representatives (other than Parent and its Representatives).

25.     In addition, Section 8.06 of the Merger Agreement requires TerraForm to pay a $15,000,000 termination fee to BEP in the event this agreement is terminated by TerraForm and improperly constrains the Company from obtaining a superior offer.

26.     Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.  As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

27.     First, the Proxy omits material information regarding TerraForm's and BEP's financial projections.

28.     With respect to the *Net Asset Value (NAV) Model* for the Company, the Proxy fails to disclose all line items used to calculate (a) Adjusted EBITDA, (b) Cash Available for Distribution, and (c) Cash Flow to Equity.  The Proxy also fails to disclose the updates and

adjustments made to the NAV Model during the process leading up to the execution of the Merger Agreement.

29.     With respect to the *Five-Year Business Plan Model* for the Company, the Proxy fails to disclose all line items used to calculate (a) Adjusted EBITDA and (b) Cash Available for Distribution.  The Proxy also fails to disclose the updates and adjustments made to the Five-Year Business Plan Model during the process leading up to the execution of the Merger Agreement.

30.     With respect to the *BEP Management Forecasts* the Proxy fails to disclose all line items used to calculate (a) Adjusted EBITDA and (b) Funds from Operations.  The Proxy also fails to disclose the updates and adjustments made to the BEP Management Forecasts during the process leading up to the execution of the Merger Agreement.

31.     With respect to the *Adjusted BEP Forecasts* the Proxy fails to disclose all line items used to calculate (i) Adjusted EBITDA and (ii) Funds from Operations.

32.     The disclosure of projected financial information is material information necessary for TerraForm stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

33.     Second, the Proxy omits material information regarding the analysis performed by the Company's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley") and Greentech Capital Advisors Securities, LLC ("Greentech") in connection with the Proposed Transaction.

34.     With respect to Morgan Stanley's *Trading Yield Analysis,* the Proxy fails to disclose Morgan Stanly's full basis for applying (i) a dividend yield range of 4.4% to 7.3% last

quarter annualized dividend of each selected company and (ii) a dividend yield range of 4.5% to 7.7% to 2020 consensus estimate of the dividend of each selected company.  This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

35.     With respect to Morgan Stanley's Precedent *Transactions Analysis*, the Proxy fails to disclose Morgan Stanley's full basis for applying premiums and discounts (as applicable) of (6.5%) to 31.0% for the selected transactions.  This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

36.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis (NAV Model Analysis)*, the Proxy fails to disclose: (i) all line items used to calculate projected cash flow to equity and (ii) the individual calculated inputs and assumptions underlying the discount rates of 4.1% and 5.1%.  This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

37.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis (Five-Year Business Plan Model Analysis)*, the Proxy fails to disclose: (i) the terminal values for TerraForm and (ii) the individual calculated inputs and assumptions underlying the discount rates of 4.1% and 5.1%.  This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

38.     With respect to Morgan Stanley's *Equity Research Analysts' Price Targets Analysis*, the Proxy fails to disclose: (i) the individual price targets observed by Morgan Stanley

in the analysis; (ii) the sources of the price targets observed; and (iii) the individual calculated inputs and assumptions underlying the discount rate of 4.6%. This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

39.     With respect to Greentech's *Discounted Cash Flow Analysis* for the Company, the Proxy fails to disclose: (i) all line items used to calculate cash flow to equity; (ii) the terminal values for TerraForm; and (iii) the individual calculated inputs and assumptions underlying the discount rate range of 5.95% to 6.45% and the perpetual growth rates of 0.75% to 1.25%. This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

40.     With respect to Greentech's *Discounted Cash Flow Analysis* for BEP, the Proxy fails to disclose: (i) all line items used to calculate cash flow to equity; (ii) the terminal values for BEP; and (iii) the individual calculated inputs and assumptions underlying the discount rate range of 5.92% to 6.42% and the perpetual growth rates of 1.25% to 1.75%. This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

41.     With respect to Greentech's *Sum-of-the-Parts Analyses*, the Proxy fails to disclose: (i) the cash flows from each project within the TerraForm forecasts; (ii) the individual calculated inputs and assumptions underlying the discount rates used in the analyses; and (iii) the value ascribed to the future growth of assets and cash flow for the years 2020 to 2024 to be realized through acquisitions and organic investments, and funded through the sale of assets or through the sale of new shares of common stock, as used in the analyses. This information must

be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

42.     With respect to Greentech's *Price Target Analysis*, the Proxy fails to disclose: (i) the individual price targets observed by Greentech; and (ii) the sources the price targets observed.  This information must be disclosed to make the Proxy not materially misleading to TerraForm stockholders and provide stockholders with full and relevant information in considering how to vote.

43.     The omission of the above-referenced material information renders the Proxy false and misleading.

44.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination

of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

49.     The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy.  Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

50.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**COUNT II**

**<u>(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF
SECTION 20(a) OF THE EXCHANGE ACT)</u>**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

55.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act,

as well as Rule 14a-9 promulgated thereunder;

      E.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 15, 2020

                          **MOORE KUEHN, PLLC**

                          */s/Justin Kuehn*
                          Justin A. Kuehn
                          Fletcher W. Moore
                          30 Wall Street, 8th floor
                          New York, New York 10005
                          Tel: (212) 709-8245
                          jkuehn@moorekuehn.com
                          fmoore@moorekuehn.com
                          *Attorneys for Plaintiff*